UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RONALD L. McCRAY,

                    Plaintiff,

          -vs-                              **No. 6:17-cv-06478-MAT**
                                            **DECISION AND ORDER**
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                    Defendant.
_____

## I.    Introduction

     Ronald L. McCray ("Plaintiff"), represented by counsel, brings
this action under Title XVI of the Social Security Act ("the Act"),
seeking review of the final decision of Nancy A. Berryhill,[1] Acting
Commissioner of Social Security ("the Commissioner" or
"Defendant"), denying his application for supplemental security
income ("SSI"). The Court has jurisdiction over the matter pursuant
to 42 U.S.C. §§ 405(g), 1383(c).   Presently before the Court are
the parties' competing motions for judgment on the pleadings
pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For
the reasons set forth below, Defendant's motion is denied, and
Plaintiff's motion is granted to the extent that the Commissioner's
decision is reversed, and the matter is remanded for further
administrative proceedings.

_____

[1]
     Nancy A. Berryhill is no longer serving in this position. The Clerk of
Court therefore is directed to substitute "The Commissioner of Social Security"
for "Nancy A. Berryhill, Acting Commissioner of Social Security" as the defendant
in this action. *See* 20 C.F.R. § 422.210(d).

## II. Procedural Status

Plaintiff protectively applied for SSI on September 26, 2013, alleging disability since May 15, 2007, due to limitations from neck and back pain; human immunodeficiency virus ("HIV"); sciatica in his arm and shoulder' depressive disorder, not otherwise specified ("NOS"); cervical radiculopathy; right ear pain; epidermal inclusion cyst; possible glaucoma; hip pain; mastoidectomy of his right ear; insomnia; sleep apnea; smoking cessation; potential dyslexia; migraines; anxiety; and short term memory loss. (T.162-67, 207).[2] His claim was denied initially. (T.93-105, 121-26). Plaintiff requested a hearing, which was held on August 27, 2015, by Administrative Law Judge David Begley ("the ALJ"), via videoconference. (T.37-82). Plaintiff appeared in Rochester, New York, with his attorney and testified. Impartial vocational expert Jennifer Karr ("the VE") also testified. On December 1, 2015, the ALJ issued a decision finding Plaintiff not disabled. (T.16-27). In connection with his request for review by the Appeals Council, Plaintiff submitted additional medical records. (T.8-10). In a letter dated May 20, 2017, the Appeals Council denied review, finding that the new evidence was not material because did not relate to the period at issue. (T.1-4). The Appeals Council's denial of review rendered the ALJ's decision

---

[2] Citations in parentheses to "T." refer to pages in the certified copy of the administrative transcript (Docket No. 7).

the final decision of the Commissioner. Plaintiff then timely commenced this action.

## III. The ALJ's Decision

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since September 26, 2103, the protective application date. (T.16). At step two, the ALJ determined that Plaintiff has the "severe" impairments of degenerative disc disease of the cervical vertebrae, sciatica, HIV, hearing loss of the right ear, major depressive disorder, and polysubstance abuse. *Id.* The ALJ found that Plaintiff's left ear hearing loss, asthma, insomnia, sleep apnea, migraines, and post-traumatic stress disorder were non-severe, a finding which Plaintiff does not contest in this appeal.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ gave particular consideration to Section 1.04 (Disorders of the Spine); Section 2.07 (Disturbance of Labyrinthine-Vestibular Function); 2.10 (Hearing Loss Not Treated with Cochlear Implantation); Section 14.08 (HIV); Section 12.04 (Affective Disorders); and 12.09 (Substance Addiction Disorders). (T.17).

Before proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with several exertional and nonexertional limitations: He cannot climb ladders, ropes, and scaffolds; can climb ramps and stairs, balance, stoop, kneel, crouch, and crawl occasionally; cannot perform repetitive rotation, flexion, or extension of the neck; must avoid concentrated exposure to extreme heat, cold, and excessive noise; must avoid hazardous machinery and unprotected heights; is limited to simple, routine repetitive tasks; can perform work in a low stress job, defined as having no fixed production quotas, no hazardous conditions, only occasional decision-making required with only occasional changes in the work setting, only occasional interaction with coworkers and supervisors, no direct interaction with the general public, and no performance of tandem tasks. (T.20).

At step four, the ALJ found that Plaintiff had no past relevant work. (T.26). At step five, the ALJ relied on the VE's testimony to determine that a person of Plaintiff's age, and with his education, work experience, and RFC, could perform the requirements of the following representative jobs that exist in significant numbers in the national economy: Small parts assembler (Dictionary of Occupational Titles ("DOT") No. 706.684-022, unskilled, light exertional level); electronics assembly worker (DOT No. 726.687-010, unskilled, light exertional level); and Inspector/hand packager (DOT No. 559.687-074, unskilled, light

exertional level). *Id*. The ALJ accordingly found that Plaintiff had not been under a disability, as defined in the Act, since the application date. (T.27*)*.

## IV. Scope of Review

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g) (stating the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart,* 336 F.3d 172, 179 (2d Cir. 2003) (citation omitted).

## V. Discussion

### A. Erroneous Weighing of Treating Physician's Opinions

#### 1. Steven Fine, M.D., Ph.D.

Plaintiff contends that the ALJ failed to provide to good reasons for declining to accord controlling weight to the opinions offered by his treating physician, infectious disease specialist

Steven Fine, M.D., Ph.D., who he began seeing in January 2013. Dr. Fine provided primary care for Plaintiff with regard to his HIV,[3] depression, and neck and back pain. (T.394-410, 413-26, 430-37, 526-26, 556-58, 572-74). The record indicates that Plaintiff saw Dr. Fine approximately every two to three months. Dr. Fine referred Plaintiff to other providers to treat his hearing loss and ear infections, his orthopedic complaints, and his mental health complaints.

On April 29, 2013, Dr. Fine completed a Monroe County Department of Human Services Physical Assessment for Determination of Employability ("2013 Physical Assessment") on Plaintiff's behalf. (T.443-46). Dr. Fine indicated that Plaintiff was unable to participate in activities except treatment or rehabilitation, namely, mental health treatment, for 3 months. (T.444). As chief complaints, Dr. Fine listed depression and history of psychiatric admission for suicidal ideation. (*Id.*). With regard to Plaintiff's HIV-positive diagnosis, Dr. Fine opined that Plaintiff's prognosis was good. (*Id.*). At that point, Plaintiff had not begun taking any medications for either his HIV or depression. (T.445). Dr. Fine described as "normal" all of Plaintiff's bodily systems. (T.445-46). Plaintiff "no evidence of limitations" in walking; standing;

---

[3]

    Initially, Plaintiff refused to take any medications for his HIV, as he stated it reminded him that he had the disease (T.403-15). In June 2014, he finally agreed to begin antiretroviral therapy, which he continued, more or less consistently, throughout the relevant period. (T.416-26, 430-37, 526-26, 556-58, 572-74). Even without medication, Plaintiff had no complications from his HIV; the medications were prescribed as a prophylactic measure. (T.394-410, 413-26, 430-37, 526-26, 556-58, 572-74).

sitting; pushing, pulling, and bending; seeing, hearing, and speaking; and being able to lift/carry. (T.446).

On March 13, 2014, Dr. Fine completed another Monroe County Department of Human Services Physical Assessment for Determination of Employability ("2014 Physical Assessment") on Plaintiff's behalf. (T.447-50). Dr. Fine indicated that Plaintiff's chief complaints were back pain, neck pain, muscle spasm, and also leg and arm pain. (T.448). He noted that Plaintiff's general appearance and gait were "stiff" and that he was "unable" to either heel-toe walk or squat. (T.449). Dr. Fine checked the box labeled "abnormal" with regard to Plaintiff's neurological and musculoskeletal systems, due to "leg/hip/arm pain." (T.450). With regard to functional limitations in an 8-hour work day, Dr. Fine restricted Plaintiff to "1-2 hours" each of walking; standing; sitting; pushing, pulling, bending; and being able to lift/carry. (T.450). Plaintiff had no limitations in seeing, hearing, or speaking. (T.450).

### 2. The ALJ's Weighing of Dr. Fine's Opinions

In his decision, the ALJ recited the functional limitations expressed by Dr. Fine in his 2013 and 2014 assessment forms. (T.23). The ALJ assigned Dr. Fine's 2014 opinion "little weight" because Plaintiff's "own activities of daily living refute these findings as described above[.]" (*Id.* (citing Exhibit B9E)). In addition, the ALJ noted, Plaintiff's "musculoskeletal physical examinations with findings of a normal gait, strength, and

reflexes do not corroborate the[se] extreme findings[.]" (*Id.* (citing Exhibits B3F (Strong Memorial Hospital Emergency Department Records and Progress Notes; T.279-327), B4F (Progress Notes dated 05/29/2013 to 12/21/2013 from URMC Strong Memorial Hospital; T.328-76) & B5F (Consultative physician Dr. Karl Eurenius's report; T.377-80)).

With regard to Dr. Fine's 2013 opinion of no physical functional limitations, the ALJ "gave little weight to the findings since they were before the protective filing date, the relevant period[,]" and, moreover, were "were superseded by the later March 2014 opinion during the relevant period." (T.23).

### 3.   The Treating Physician Rule

Under the regulations in effect at the time of the ALJ's decision here, "[i]f . . . a treating source's[4] opinion . . . is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence . . . [it] will [be] give[n] controlling weight." 20 C.F.R. § 416.927(c)(2). "Medically acceptable techniques include consideration of a patient's report of complaints, or the patient's history, as essential diagnostic tools." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003). "An ALJ who refuses to give

---

[4]     A treating source is the claimant's "own physician, psychologist, or other acceptable medical source who provides [a claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 416.902.

controlling weight to the medical opinion of a treating physician must consider various factors [listed in the regulations] to determine how much weight to give to the opinion." *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted); *see also Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) ("[T]o override the opinion of the treating physician, we have held that the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist.") (citation omitted).

A corollary to the treating physician rule is the so-called "good reasons rule," which is based on the regulations specifying that "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (*per curiam*) (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2); citation omitted). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific. . . .'" *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting SSR 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996)). The "good reasons" rule exists to "ensur[e] that each denied claimant receives fair process[.]" *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, an ALJ's "'failure to follow the procedural requirement of identifying the reasons for

discounting the opinions and for explaining precisely how those reasons affected the weight' given 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record[,]'" *Blakely,* 581 F.3d at 407 (quotation omitted; emphasis in original).

### 4. Application

Plaintiff argues that "[t]he ALJ did not explicitly consider these factors, which are well-documented in the record and weigh heavily in favor of the treating sources." (Plaintiff's Brief ("Pl.'s Br.") (Docket No. 11-1) at 24). As an initial matter, the Court finds it makes no sense for Plaintiff to argue that the ALJ erred in giving little weight to Dr. Fine's 2013 Physical Assessment. That report assigned *no* limitations to Plaintiff, and therefore was unhelpful for his disability claim. The Court finds that the ALJ did not err in finding that the 2013 report by Dr. Fine was entitled to little weight.

The Court turns now to Dr. Fine's 2014 Physical Assessment, in which Dr. Fine allegedly "opined that [Plaintiff] has significant physical and mental limitations.") (*Id.* (citing T.449-55)). However, the page citations Plaintiff gave in support of this assertion, T.449-55, conflate two reports issued on different dates. Pages 449 through 450 are part of Dr. Fine's March 2014 Physical Assessment, and refer only to Plaintiff's physical limitations. Pages 451 through 455, on the other hand, refer to an HIV Questionnaire completed by Dr. Fine on July 23, 2015. In the

HIV Questionnaire, Dr. Fine does rate Plaintiff's mental limitations. However, it appears that the ALJ did not discuss this opinion by Dr. Fine in his decision. Remand accordingly is warranted so that the ALJ can weigh Dr. Fine's July 23, 2015 HIV Questionnaire (T.451-55) dealing with Plaintiff's mental and physical limitations.

With regard to the ALJ's weighing of Dr. Fine's 2014 Physical Assessment, Plaintiff argues that the ALJ "erred by failing to identify particular findings before discrediting the treating sources' opinions as inconsistent with treatment records." (Pl's Br. at 25 (citing *Wilson v. Colvin,* 213 F. Supp.3d 478, 487 (W.D.N.Y. 2016) (ALJ's assertion that the treating physician's physical limitations were "wholly inconsistent with the entire record" did not constitute a "good reason" for discounting them because it was (1) inaccurate, and (2) insufficiently specific, as the ALJ "concluded without explanation that [treating physician] Dr. Harris' opinions were 'wholly inconsistent with the entire record'"). The Commissioner argues that *Wilson* is distinguishable because the ALJ specifically referenced Plaintiff's normal musculoskeletal physical examinations with findings of a normal gait, strength, and reflexes, and also provided references to the exhibits that contained those particular findings: Exhibits B3F (Strong Memorial Hospital Emergency Department Records and Progress Notes dated 05/14/2013 to 12/17/2013, T.279-327), B4F (Progress Notes dated 05/29/2013 to 12/21/2013 from URMC Strong Memorial

Hospital, T.328-76) & B5F (Consultative physician Dr. Karl Eurenius's report, T.377-80)). (*See* Defendant's Brief ("Def.'s Br.") (Docket No. 14-1) at 20-21). The Commissioner notes that, elsewhere in his decision, the ALJ discussed Plaintiff's normal musculoskeletal findings with more particularity, referencing specific findings by multiple providers (including Dr. Fine) on dates throughout the relevant period. (*Id.* (citing (T.18-25 (citing T.276, 280-81, 299, 306, 378-80, 430-31, 482-84, 487-90, 557))). The Commissioner reasons that this discussion demonstrates that the ALJ sufficiently identified the medical evidence that undermined Dr. Fine's opinion. (Def.'s Br. at 21).

The Court disagrees. The ALJ did not make these connections between the record and Dr. Fine's findings in the context of discussing the weight to be given to this doctor's opinion. Therefore, the Commissioner's argument consists of impermissible *post hoc* rationalizations not apparent from the face of the ALJ's decision. *See, e.g., Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action.").

In any event, the pages numbers referenced in the foregoing paragraph, as well as many pages of the exhibits cited by the ALJ, refer to records where Plaintiff is being seen for medical issues other than his neck and back pain. For instance, page 276 refers to a visit at Dr. Paul Dutcher's office to treat chronic recurrent otitis; pages 280 to 281 refer to an emergency room visit for

nausea, vomiting, diarrhea, and headache. It is not surprising that these providers, who were not treating Plaintiff for his orthopedic issues, did not perform a full musculoskeletal examination. The lack of abnormal musculoskeletal findings in those records are therefore not particularly probative. In addition, even though other records pointed out by the Commissioner note that Plaintiff had normal strength, reflexes, and gait, *e.g.,* T.299, the Commissioner neglects to mention that the records also contain abnormal findings. For instance, at page 299, orthopedic surgeon Clifford Everett, M.D. observed several abnormalities, including "[d]iffuse pain with cervical rotation and extension that centralizes with repetitive chin tuck and extension," "[p]ain with lumbar spine flexion with less pain on extension," and diffuse upper extremity and lower extremity tenderness to superficial and deep touch. (T.299). Notably, Dr. Clifford discussed with Plaintiff that complete pain resolution was not possible "due to the chronicity of this issue." (*Id.*). Subsequent imaging obtained by Dr. Clifford revealed a C5-6 midline protrusion with mild to moderate central narrowing and primary neck pain. (T.490). Dr. Clifford recommended surgery or at least injections, but Plaintiff remained "steadfast" in his rejection of these options. (*Id.*). Instead, Plaintiff elected to pursue physical therapy; Dr. Clifford prescribed a McKenzie program which he thought would allow Plaintiff to "functionally be able to overcome the issue." (T.299). Thus, even though Plaintiff had normal gait and strength

in his upper and lower extremities, he nevertheless had neck and back issues that were sufficiently severe to warrant surgical intervention. In short, the Court does not accept the Commissioner's attempt to supply after-the-fact justifications for the ALJ's weighing of Dr. Fine's opinion.

The Court notes that the ALJ also cited to Dr. Eurenius' consultative report as being inconsistent with Dr. Fine's restrictive 2014 opinion. While the ALJ's citation to the consultative examiner's report is not overbroad, it refers only to selective clinical findings (normal gait, strength, and reflexes), and ignores the multiple abnormal clinical findings observed by Dr. Eurenius, including the ability to squat only one-quarter way due to back pain; cervical flexion and extension limited to approximately 30 degrees and cervical rotation limited to approximately 45 degrees, all of which ware associated with pain felt in the posterior neck and also into the left posterior; lumbar spine flexion limited to approximately 30 degrees with pain and tenderness in the low mid back; lumbar spine extension limited to 0 degrees with similar pain; lateral flexion and rotation were limited to 20 degrees in each direction with pain in the low mid back; and straight-leg raising was positive at 45 degrees on the left with pain in the low mid back and at 60 degrees on the right with pain in the low mid back. (T.379).

It is true that Dr. Eurenius did not assign any limitations on Plaintiff's ability to sit, stand, or walk, which does contrast

with the extreme limitations assigned by Dr. Fine in those areas. However, Dr. Eurenius found that Plaintiff "is moderately limited in bending, lifting, carrying, pushing, and pulling, due to chronic low back pain with neuropathic symptoms" and "is also moderately limited in lifting, carrying, and reaching above his head due to neck and left shoulder pain, status post cervical spine disease with neuropathic symptoms." (T.380). The ALJ found Plaintiff capable of light work, but work at this level requires "frequent lifting or carrying of objects weighing up to 10 pounds." SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983). "[T]he frequent lifting or carrying of objects weighing up to 10 pounds (which is required for the full range of light work) implies that the worker is able to do occasional bending of the stooping type; i.e., for no more than one-third of the workday to bend the body downward and forward by bending the spine at the waist." SSR 83-14, at *4 (S.S.A. 1983). The ALJ did not actually weigh Dr. Eurenius' complete medical source statement as required by the regulations applicable to Plaintiff's claim. *See* 20 C.F.R. § 416.927(c) ("We will evaluate every medical opinion . . . receive[d].") (applicable to claims filed before Mar. 27, 2017). Instead, the ALJ stated somewhat cryptically as follows: "The findings of sciatica pain, 'moderate' levels of restriction by the consultative examiner [Dr. Eurenius], and 'mild to moderate' levels of damage to the neck also restrict his exertional activities; however, consistent findings of his ability to maintain a normal gait and not require an assistive

device indicate that his exertional level is properly placed at light." (T.23). Thus, the implication from this statement is that the ALJ recognized that Dr. Eurenius' opinion supported some degree of limitation in Plaintiff's RFC. However, the ALJ did not explain how the moderate limitations in bending, lifting, carrying, pushing, pulling, and reaching assigned by Dr. Eurenius are accommodated by an RFC for light work which, as noted above, requires frequent lifting or carrying of objects weighing up to 10 pounds and occasional stooping. Furthermore, it is unclear how Plaintiff's ability to "maintain a normal gait" and walk without an assistive device translate in an ability to perform frequent lifting or carrying of objects weighing up to 10 pounds and occasional stooping.

In sum, the Court finds several legal errors in connection with the ALJ's weighing of Dr. Fine's opinions. First, the ALJ failed to acknowledge that Dr. Fine qualified as a "treating physician" and did not provide "good reasons," set forth with sufficient particularity to allow meaningful appellate review, for discounting Dr. Fine's 2014 opinion. *E.g., Marthe v. Colvin*, No. 6:15-CV-06436(MAT), 2016 WL 3514126, at *9 (W.D.N.Y. June 28, 2016) (remanding where ALJ failed to provide good reasons for not crediting the opinion of a claimant's treating physician) (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *Richardson v. Barnhart*, 443 F. Supp.2d 411, 424–25 (W.D.N.Y. 2006) (remanding for a second time where the ALJ's decision "did not give good reasons,

supported by substantial evidence, for failing to assign controlling weight to the opinion of a treating source"). Second, the ALJ completely failed to weigh Dr. Fine's 2015 HIV Questionnaire. Third, the ALJ failed to weigh consultative physician Dr. Eurenius' complete medical source statement. These omissions provide another basis for remand.

**B.    Failure to Weigh Treating Therapists' Opinions**

Two of Plaintiff's mental health care providers, Rachel Zielinski, LCSW ("LCSW Zielinski"), and Wendy Garrett-Barnes, PMHNP ("PMHNP Garrett-Barnes"), completed a Monroe County Department of Human Services Physical Assessment for Determination of Employability form on his behalf on August 21, 2015. The ALJ commented that Plaintiff's "social worker believed that his mental impairments had a moderate to severe impact on his mental abilities," (T.24), citing LCSW Zielinski and PMHNP Garrett-Barnes' assessment. However, the ALJ failed to recognize it as opinion evidence and weigh it in accordance with the Commissioner's regulations and policy rulings. This is legal error warranting remand. *See*, *e.g.*, *Barrett v. Colvin*, 211 F. Supp.3d 567, 582 (W.D.N.Y. 2016) (remanding where ALJ "failed to explicitly weigh [treating chiropractor]'s opinions") (citing SSR 06-03p, 2006 WL 2329939, at *4 (S.S.A. Aug. 9, 2006) ("Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects,

along with the other relevant evidence in the file."); other citation omitted).

## C.   Erroneous Credibility Assessment

### 1.   The Applicable Regulations

The Commissioner's regulations in effect at the time of the ALJ's decision set forth a two-step process for evaluating symptoms such as pain, fatigue, weakness, depression, and nervousness. See 20 C.F.R. § 416.929(c). First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms; if so, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the claimant's capacity for work. 20 C.F.R. § 416.929(c)(1). Thus, while an ALJ is required to consider a claimant's reports about her symptoms and limitations, see 20 C.F.R. § 416.929(a), an ALJ is "not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record[.]" Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). "While it is 'not sufficient for the [ALJ] to make a single, conclusory statement that' the claimant is not credible or simply to recite the relevant factors, remand is not required where 'the evidence of record permits us to glean the rationale of an ALJ's decision,'" Cichocki v. Astrue, 534 F. App'x 71, 76 (2d Cir. 2013) (unpublished opn.) (quoting Mongeur v. Heckler, 722 F.2d

1033, 1040 (2d Cir. 1983); internal citation omitted; alteration in original).

## 2. The ALJ's Credibility Assessment

The ALJ first found that "the medical evidence of record did not support his allegations" but "[i]nstead, the record indicated that [Plaintiff]'s back impairments did not greatly inhibit his ability to get around, lift objects, and maneuver since he maintained a normal gait and musculoskeletal strength in his upper/lower extremities throughout the disability period." (T.25). In addition, the ALJ noted, "physical examinations . . . revealed his ability to perform maneuvers such as heel walking, toe walking, and an ability to rise from a chair without difficulty[,]" and he "did not need the use of an assistive device to get around." (T.25 citations to record omitted)). Plaintiff does not take issue with this aspect of the ALJ's credibility assessment.

Next, the ALJ found that Plaintiff's "noncompliance with medication and treatment indicate that he is not attempting to maximize his potential, especially when there was documented improvement with compliance[.]" (T.25 (citing Exhibits 14F (Progress Notes dated 05/21/2015 to 07/23/2015, T.527-79) & 15F (Outpatient/Inpatient Rehabilitation Records; various dates in 2014 and 2015, T.580-629)). Under the policy ruling in effect at the time of the ALJ's decision, a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records

show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *7 (S.S.A. July 2, 1996). However, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id.*

The Court finds that there is substantial evidence of Plaintiff's failure to follow his medical provider's treatment recommendations in the exhibits cited by the ALJ.[5] For instance, on May 21, 2015, Plaintiff informed Dr. Fine that he "did not keep his followup with orthopedics, [or] physical therapy. Because he is not feeling doing anything." (T.527). He also discontinued his pain medications as prescribed (tramadol, Naprosyn, gabapentin), because he does not feel they helped him at all; instead, he "feels the only thing that helps him is oxycodone that was given to him by a friend." (*Id.*). In addition, Plaintiff had "stopped taking his antiretroviral medication because he doesn't feel like doing anything." (*Id.*). Plaintiff asserts that the ALJ erred by drawing

---

[5]
Plaintiff's non-compliance with treatment recommendations and medication regimens also is documented elsewhere in the record. For instance, Plaintiff admitted to Dr. Fine on multiple occasions that he was not taking any medications for pain, for his mental health symptoms, or for his HIV. (T.404, 406, 409, 413-14, 416-17, 419, 421, 423-25, 430-31, 433, 435-36, 523, 572-73).

an adverse inference based on his noncompliance before failing to consider whether it may be a function of his mental impairments and thus justifiable. (*See* Pl.'s Br. at 29-30). As Plaintiff notes, SSR 96-7p states that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." 1996 WL 374186, at *7. There is conflicting evidence in the record on this topic. At times, Plaintiff was able to be compliant with treatment recommendations, even when he was having active symptoms of depression; at others, Plaintiff's depression, in particular concerning his HIV positive status, interfered with his judgment. The ALJ did not perform the inquiry required by SSR 96-7p, and for this reason, remand is required.

The ALJ next considered Plaintiff's activities of daily living, which "demonstrated [his] broad range of functional capabilities." (T.25). The ALJ cited Exhibit B2E, a function questionnaire dated December 31, 2013, and noted that Plaintiff "reported being able to tend to his personal care with little to no mental difficulties, preparing/cooking meals, shopping in the store for groceries, managing his finances, and tending to hobbies (such as cooking, reading, and socializing with friends)." (T.25). The ALJ characterized "[s]uch activities [as] . . . indicative of a

comprehensive ability to function in the workplace." (*Id.*). However, Plaintiff's more recent statements, namely, his testimony at the hearing, reflect daily activities that are more limited in scope. Also, as Plaintiff notes, "[c]ourts in this Circuit repeatedly have recognized that '[a] claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a sedentary job.'" *Harris v. Colvin*, 149 F. Supp.3d 435, 445 (W.D.N.Y. 2016) (quoting *Polidoro v. Apfel*, No. 98 CIV.2071(RPP), 1999 WL 203350, at *8 (S.D.N.Y. 1999) (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983)).

## VI. Conclusion

For the foregoing reasons, the Court finds that the Commissioner's decision is marred by several legal errors. Accordingly, it must be reversed and the case remanded for further administrative proceedings consistent with this Decision and Order. In particular, the ALJ is directed to weigh, in the first instance, Dr. Fine's 2015 HIV Questionnaire and Dr. Eurenius' consultative report, applying the appropriate regulatory factors; the ALJ is directed to re-weigh Dr. Fine's 2014 Physical Assessment, applying the appropriate regulatory factors; the ALJ is directed to weigh, in the first instance, the 2015 opinion of LCSW Zielinski and PMHNP Garrett-Barnes; and the ALJ is directed to re-evaluate Plaintiff's

credibility and perform the inquiry required under SSR 96-7p relative to Plaintiff's noncompliance with treatment. Plaintiff's Motion for Judgment on the Pleadings is granted to the extent that, as set forth above, the Commissioner's decision is reversed, and the claim is remanded for further administrative proceedings. Defendant's Motion for Judgment on the Pleadings is denied. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    July 12, 2018
          Rochester, New York.